IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 18, 2008 Session

## STATE OF TENNESSEE v. MOHAMED IMAN

### Direct Appeal from the Circuit Court for Bedford County
No. 15991   Robert Crigler, Judge

No. M2007-00103-CCA-R3-CD - Filed December 4, 2008

The appellant, Mohamed Iman, pled guilty in the Bedford County Circuit Court to possession of a Schedule I drug with intent to deliver with the sentence length and manner of service to be determined by the trial court. Prior to being sentenced, the appellant filed a motion to withdraw his guilty plea, which was denied by the trial court. After a sentencing hearing, the trial court sentenced the appellant to ten years in confinement. On appeal, the appellant contends that the trial court erred by (1) referring to the wrong standard in denying his motion to withdraw his guilty plea and accepting an unknowing plea; (2) accepting the plea agreement when it failed to establish venue for the crime; (3) not personally and directly addressing the appellant during the guilty plea hearing; (4) refusing to give the appellant a community corrections sentence; and (5) failing to certify the interpreter. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Jefre S. Goldtrap, Nashville, Tennessee, and Andrew Jackson Dearing, Shelbyville, Tennessee, for the appellant, Mohamed Iman.

Robert E. Cooper, Jr., Attorney General and Reporter; Mark A. Folks, Assistant Attorney General; Charles Frank Crawford, Jr., District Attorney General; Michael D. Randles and Ann L. Filer, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

### I. Factual Background

On October 12, 2006, the appellant pled guilty to the offense through an interpreter. At the plea hearing, the State recited the following facts underlying the appellant's conviction:

On September 4, 2005, a deputy with the sheriff's department observed a vehicle traveling on Highway 231. The vehicle was swerving in and out of [its] lane of traffic. The deputy passed the vehicle. The vehicle actually swerved towards the deputy's vehicle. The deputy stopped the vehicle. The driver was Mr. Iman. He stated he had a driver's license, but did not have it [in] his possession.

The deputy noticed Mr. Iman chewing a green plant material. . . . The deputy asked for permission to search Mr. Iman's vehicle. Mr. Iman replied, yes, go ahead and search. The deputy found a white plastic bag containing a green plant material under the front passenger seat.

The deputy searched the trunk. The deputy found 16 clear plastic bags containing the same green plant material. The deputy seized this green plant material and arrested the defendant.

The green plant material was sent to the Tennessee Bureau of Investigations Crime Laboratory. The material tested positive for cathinone. The street name for that drug is Khat, spelled K-h-a-t. Khat is a Schedule I drug. And the total weight of the green material was 2.4 pounds.

Although the appellant had been charged with possession of a Schedule I drug with intent to sell and possession of a Schedule I drug with intent to deliver, the appellant pled guilty only to the latter offense. Subsequently, the appellant filed a motion to withdraw his guilty plea, claiming that "his limited command of the English language, coupled with his limited understanding of laws and procedure, coupled with his limited ability to contact his family, community and outside retained counsel made for a plea that is now ripe for withdrawal."

At the motion hearing, the appellant, a native of Somalia, testified through an interpreter that he had been living in the United States for more than two years and had taken some English language classes before coming to this country. After the appellant's arrest, counsel from the public defender's office was appointed to represent him, and the appellant met with counsel one time to discuss his case. The appellant was unaware that Khat was a Schedule I drug. On Sunday, October 11, 2006, the appellant talked with a "paid lawyer." A hearing had been scheduled for the next day, and the appellant thought he was "going to talk to the DA and make some kind of agreement" at the hearing. Instead, a guilty plea hearing occurred, and the appellant pled guilty. He stated that he did not ask for a continuance on October 12 because "this situation was going very fast so I did not request it. I did not understand." He said he answered the trial court's questions at the plea hearing "just like they would expect it of me" and that he was rushed into making a decision about his plea. The appellant said that he did not understand he was pleading guilty to everything the State alleged and that he pled guilty because he "did not understand any of the things that were going on." The

appellant understood that he was presumed innocent. However, he did not understand that he could have gone to trial and that he gave up his right to appeal by pleading guilty. He also did not understand that as a result of his plea, he could be sent to prison. He said he had been told that he would serve eight to ten years on probation.

On cross-examination, the appellant testified that he met with counsel from the public defender's office only one time outside of court. He went to the public defender's office once, but he and counsel were unable to communicate because of the language barrier. On the morning of the appellant's guilty plea hearing, the appellant met with counsel and an interpreter, but the appellant "could not grasp what they were talking about." Counsel tried to talk with the appellant, but the appellant "could not grasp it." The appellant tried to explain the facts of his case to counsel, but counsel did not understand him very well. The appellant acknowledged that counsel went over the Petition to Enter a Plea of Guilty with him and that the interpreter read the entire form to him in his native language. The appellant told counsel he did not understand some parts of the plea form, but counsel told the appellant that "those things are not related to you." The appellant said he asked counsel some questions about the plea form. Counsel gave him a brief explanation but did not give him a detailed answer. He acknowledged that he signed the plea form but said he "did not comprehend what the paper was about." When he signed the guilty plea form, he did not know he was pleading guilty to a crime but thought he was being given another appointment for court. The appellant did not know he had been charged with possession of Khat for resale and delivery and thought he was in jail only for consuming it.

The appellant testified that the trial court did not explain to him at the guilty plea hearing that he did not have to plead guilty, and the appellant did not remember the court's telling him that he had a right to plead not guilty. When asked if the court told him that he had a right to a jury trial, representation by an attorney, and an appeal if convicted, the appellant said, "No, that is not how I understood it." He said he thought he was going to court for trial and did not know the trial court was going to sentence him for his guilty plea. However, he acknowledged that he met with an investigating officer from the Board of Probation and Parole while in jail and that she told him she was going to prepare a report the trial court would consider when deciding his sentence. He also acknowledged that in 2005, he was arrested in Pennsylvania and charged with possession of Khat. He said that although he pled guilty to the charge, "It wasn't me who had it."

The trial court recalled that defense counsel spent about two and one-half hours with the appellant on the morning of the guilty plea hearing. The trial court said the plea hearing lasted about one hour and "was anything but rushed." The trial court noted that the appellant participated in the hearing and "indicated he understood what [was happening] by his questions and his responses and going to the factual basis of the case." The trial court said the appellant had a "selective memory" and had given evasive answers at the hearing on his motion to withdraw. The trial court noted that the appellant also had given inconsistent answers at the motion hearing, and the court did not believe the inconsistencies were caused by a communication problem. The court specifically stated that the appellant was not "credible today" and concluded that he had pled guilty knowingly, voluntarily, and intelligently.

Immediately following the trial court's denial of the appellant's motion to withdraw his guilty plea, the trial court held the appellant's sentencing hearing. At the conclusion of the hearing, the trial court sentenced the appellant to ten years in confinement.

On appeal, the appellant raises various issues regarding his plea, the trial court's denial of his motion to withdraw his plea, and his sentence. The State contends that the appeal should be dismissed because the notice of appeal was untimely. The trial court sentenced the appellant on November 20, 2006, and "11/20/06" is the date filled in for the "Date of Entry of Judgment" on the judgment of conviction form. However, no file-stamp is on the form to show when the clerk entered the judgment of conviction. Pursuant to Rule 4 of the Tennessee Rules of Appellate Procedure, the appellant was required to file his notice of appeal within thirty days after the date of entry of the judgment. He filed his notice of appeal on January 8, 2007, but without the clerk's file-stamp on the judgment of conviction, we cannot determine whether his notice of appeal was untimely. See State v. Kirby Stephens, ___ S.W.3d ___, No. M2006-02521-CCA-R3-CD, 2007 WL 2744999, at *8 (Tenn. Crim. App. at Nashville, Sept. 21, 2007) (publication pending) (providing that the thirty-day time period begins to run when the judgment of conviction was filed by the trial court clerk). In any event, Tennessee Rule of Appellate Procedure 4(a) provides that the notice of appeal is not jurisdictional and that timely filing may, therefore, be waived in the interest of justice. On June 25, 2008, the appellant filed a Motion to Accept a Late Filed Notice of Appeal, requesting that this court waive the timely filing. We choose to waive the timely filing requirement in this case and address the appellant's issues.

## II.  Analysis

### A.  Withdrawal of Unknowing Guilty Plea

The appellant claims that the trial court referred to the incorrect standard when denying his motion to withdraw his guilty plea. Specifically, he contends that the trial court improperly determined that granting his motion to withdraw was not necessary to correct manifest injustice rather than determining that no fair and just reason warranted granting the motion. He also argues that the trial court should have granted his motion because he presented a fair and just reason, i.e., that he did not plead guilty knowingly, for withdrawing his plea. The State contends that the trial court relied on the correct standard and properly denied the motion because it failed to find that any fair and just reason allowed withdrawal of the plea. We agree with the State.

Once entered, a guilty plea cannot be withdrawn as a matter of right. State v. Mellon, 118 S.W.3d 340, 345 (Tenn. 2003). Rule 32(f), Tennessee Rules of Criminal Procedure, provides that a "guilty plea may be withdrawn before sentence is imposed for any fair and just reason; but to correct manifest injustice, the court after sentence, but before the judgment becomes final, may set aside the judgment of conviction and permit the defendant to withdraw his plea." In this case, the appellant filed the motion to withdraw his guilty plea prior to sentencing. Therefore, the standard he must meet is the less stringent "any fair and just reason" standard. "This court has listed five factors that are useful in determining whether a defendant has 'any fair and just reason' for

-4-

withdrawing a plea." State v. Marcus E. Robinson, No. M2005-00670-CCA-R3-CD, 2006 Tenn. Crim. App. LEXIS 286, at *13 (Nashville, Apr. 5, 2006), perm. to appeal denied, (Tenn. 2006). Those factors are as follows:

> 1.  The length of time between the entry of the guilty plea and the filing of the motion to withdraw it;
>
> 2.  Why the grounds for withdrawal were not presented to the court at an earlier point in the proceedings;
>
> 3.  Whether the defendant has asserted and maintained his innocence;
>
> 4.  The circumstances underlying the entry of the plea of guilty, the nature and background of the defendant, and whether the defendant has admitted guilt;
>
> 5.  Once the defendant has established a fair and just reason, whether the prosecution will be prejudiced should the plea be withdrawn.

Id. Whether a defendant should be allowed to withdraw his guilty plea is a matter left to the sound discretion of the trial court. State v. Crowe, 168 S.W.3d 731, 740 (Tenn. 2005). This court will uphold a trial court's decision not to allow a defendant to withdraw his plea absent an abuse of discretion. See State v. Davis, 823 S.W.2d 217, 220 (Tenn. Crim. App. 1991).

At the conclusion of the hearing on the motion to withdraw, the trial court took judicial notice of the guilty plea hearing transcript and noted that the appellant participated in the hearing. The trial court stated that the appellant's questions and responses indicated he understood what was happening when he entered his plea. The court specifically found that the appellant had not been credible at the motion to withdraw hearing and concluded that he pled guilty knowingly, voluntarily, and understandingly. The following exchange then occurred:

> [THE COURT:] I will give ya'll a minute to digest that. . . . I do not find that he is entitled to withdraw his plea under Rule 32-F. Do not find any manifest injustice that needs correcting. I find that he understood what he was doing.
>
> [Defense Counsel:] Your honor, respectively, it is not a manifest injustice. It is for fair and just reason. Manifest injustice --
>
> THE COURT: After the sentence -- I find that there is no -- I find that there is no reason -- it would not work any unfair or unjust result to not allow this to stand.

The trial court initially referred to the incorrect standard, manifest injustice, in denying the appellant's motion. However, defense counsel informed the trial court of the correct standard, any fair and just reason, and the trial court concluded that the appellant was not entitled to relief under that standard as well. The trial court relied on the correct standard.

We will now determine whether the trial court properly denied the appellant's motion to withdraw his guilty plea. The appellant claimed in his motion to withdraw and claims on appeal that he did not understand what he was doing when he pled guilty. However, the guilty plea hearing transcript shows otherwise. According to the transcript, the trial court asked the appellant if he had signed the Petition to Enter Plea of Guilty. The appellant said yes and acknowledged that the interpreter had read the form to him. The trial court asked the appellant if the interpreter and defense counsel had gone over the form with him, and the appellant said, "Very well, sir." The trial court also asked the appellant if there was anything about the form he did not understand or wanted explained further, and the appellant said, "No, sir." The trial court then informed the appellant that he had the right to plead not guilty, the right to a trial by jury, and the right to be represented by an attorney. The trial court asked the appellant if he understood each of those rights, and the appellant answered, "Yes, sir." The trial court also informed the appellant of various other rights, including that he had the right to be present at his trial and that he could not be forced to testify against himself. Periodically, the appellant asked the trial court to repeat a statement, and the trial court explained the right to the appellant again. When the trial court asked the appellant if he was guilty of counts one and two in the indictment, the appellant said he was not guilty of possessing the drug with intent to sell. However, he said, through his attorney, that he "was on his way to Bedford County with the intent to deliver [the drug] to someone else."

The trial court stated that it was only going to accept the appellant's plea with regard to count two, possession with intent to deliver.[1] The court asked the appellant if he had been promised anything in return for his plea, and the appellant said no. The trial court informed the appellant that he would not have a trial but would have a sentencing hearing, and the appellant said he understood. The trial court also asked the appellant if he had any difficulty communicating with the public defender's office, and the appellant said no. The trial court accepted the appellant's plea and scheduled a sentencing hearing. In light of the guilty plea hearing transcript, we believe the appellant pled guilty knowing, intelligently and voluntarily. Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998) (citing Boykin v. Alabama, 395 U.S. 238, 244, 89 S. Ct. 1709, 1713 (1969)); see also State v. Mackey, 553 S.W.2d 337, 341 (Tenn. 1977).

Furthermore, consideration of the five factors also supports the trial court's failing to find "any fair and just reason" for withdrawing the appellant's plea. The appellant filed the motion to withdraw on November 14, 2006, over one month after his guilty plea hearing, and he has offered no reason for why the motion was not presented to the trial court earlier. The appellant readily admitted at the hearing that he was guilty of possessing Khat with intent to deliver. The circumstances underlying the entry of the plea also weigh against granting his motion to withdraw.

---

[1]The State informed the court that it would dismiss count 1.

The appellant faced the possibility of being convicted of two offenses and receiving a longer sentence. While a defendant's lack of experience with the legal system and the English language can be a cause for concern, the appellant in this case answered yes and no at the appropriate times and never indicated at the plea hearing that he had any trouble understanding his interpreter or his attorney. We conclude that the appellant failed to provide any fair and just reason why his plea should be withdrawn. Therefore, the fifth factor is of no concern, and we conclude that the trial court did not err by denying the appellant's motion to withdraw his guilty plea.

## B. Venue

The appellant contends that the trial court erred by accepting his plea because the State failed to establish venue for the crime when it gave a factual basis for the plea at the plea hearing. The State argues that the appellant has waived this issue. We agree with the State. When a defendant pleads guilty, he waives his right to challenge venue. Ellis v. Carlton, 986 S.W.2d 600, 602 (Tenn. Crim. App. 1998); Recor v. State, 489 S.W.2d 64, 69 (Tenn. Crim. App. 1972). Therefore, the appellant is not entitled to relief.

## C. Trial Court's Addressing the Appellant During the Plea Hearing

Next, the appellant contends that the trial court committed reversible error by failing to address him personally and directly during the guilty plea hearing. Rule 11(b)(1), Tennessee Rules of Criminal Procedure, provides that before a trial court accepts a defendant's guilty plea, the court "shall address the defendant personally in open court and inform the defendant of, and determine that he or she understands" the consequences of the guilty plea and determine whether the defendant understands those consequences. Our review of the guilty plea hearing transcript confirms that the trial court thoroughly addressed the defendant personally, albeit through an interpreter, in open court about his plea. The trial court informed the appellant of his rights, asked him if he understood his rights, and carefully explained a particular right when the appellant indicated he did not understand. The appellant is not entitled to relief.

## D. Community Corrections

The appellant contends that the trial court erred by refusing to give him a sentence alternative to confinement, specifically community corrections. The State contends that the trial court properly denied alternative sentencing. We agree with the State.

At the appellant's sentencing hearing, the appellant testified that he did not offer any resistance during his arrest and that he was cooperative with the investigating officer who prepared his presentence report. He acknowledged that he had almost graduated from high school and that he planned to continue his education. He stated that his health was "[v]ery well" and that his most recent employment was for an oxygen supply company. The appellant acknowledged that his entire family was from Somalia, that Khat was legal there, and that he shared the drug with his friends when they came to his house. The appellant stated that he now knew Khat was illegal in this

country. He stated that he could stop using the drug and that he would attend classes to help him stop using it if the trial court so ordered. He also stated he would submit to drug testing. On cross-examination, the appellant acknowledged that in addition to his arrest on September 4, 2005, he also was arrested for possessing Khat in December 2005.

The State introduced the appellant's presentence report into evidence. According to the report, the then twenty-four-year-old appellant was single and completed the eleventh grade in Nairobi, Kenya. He stated in the report that he was in good physical and mental health but that he had been using Khat since he was thirteen years old. In the report, the appellant said he had worked for an oxygen supply company in Portland, Oregon and for a Nissan plant in Tennessee. The report did not show any prior convictions. However, the appellant stated in the report that he was arrested on December 21, 2005, in Clarion, Pennsylvania, and was charged with possession of Khat. He pled guilty to the offense and was placed on one year of unsupervised probation.

The trial court noted that this crime involved a Schedule I drug, the "most serious" type of drug, and that the amount of the drug the appellant possessed was "fairly substantial." The trial court applied enhancement factor (1), that the appellant has a "previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range," to his sentence based upon the appellant's prior conviction in Pennsylvania and his prior illegal use of Khat in the United States. Tenn. Code Ann. § 40-35-114(1). The trial court applied no mitigating factors. It noted that the appellant was a Range I, standard offender facing a sentence of eight to twelve years for a Class B felony and sentenced him to ten years. See Tenn. Code Ann. § 40-35-112(a)(2). The trial court also noted that the appellant was not eligible for probation under Tennessee Code Annotated section 40-35-303 but possibly was eligible for a community corrections sentence. See Tenn. Code Ann § 40-35-303 (providing that a defendant is not eligible for probation if convicted of violating Tenn. Code Ann. § 40-35-417(b), possession of a Schedule I drug with intent to deliver). It concluded that based on the evidence presented at the guilty plea and sentencing hearings, the presentence report, the principles of sentencing, the arguments made as to sentencing alternatives, the nature and characteristics of the criminal conduct, and the appellant's potential for rehabilitation, it was denying the appellant's request for an alternative sentence in order to avoid depreciating the seriousness of the offense.

Appellate review of the length, range or manner of service of a sentence is de novo. See Tenn. Code Ann. § 40-35-401(d). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statement by the appellant in his own behalf; and (7) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210 (2003); see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments. Moreover, if the record reveals that the trial court adequately

considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Id. at (d); Ashby, 823 S.W.2d at 169.

We recognize that an appellant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. See Tenn. Code Ann. § 40-35-303(a) (2006). Moreover, an appellant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a candidate for alternative sentencing. See Tenn. Code Ann. § 40-35-102(6). In the instant case, the appellant pled guilty to a Class B felony; therefore, he is not considered a favorable candidate for alternative sentencing. Nevertheless, because the sentence imposed was ten years or less, he is still eligible for alternative sentencing.

The Community Corrections Act of 1985 was enacted to provide an alternative means of punishment for "selected, nonviolent felony offenders in front-end community based alternatives to incarceration." Tenn. Code Ann. § 40-36-103(1). Tennessee Code Annotated section 40-36-106(a)(1) provides that an offender who meets all of the following minimum criteria shall be considered eligible for community corrections:

> (A) Persons who, without this option, would be incarcerated in a correctional institution;
>
> (B) Persons who are convicted of property-related, or drug-or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;
>
> (C) Persons who are convicted of nonviolent felony offenses;
>
> (D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
>
> (E) Persons who do not demonstrate a present or past pattern of behavior indicating violence;
>
> (F) Persons who do not demonstrate a pattern of committing violent offenses.

An offender is not automatically entitled to community corrections upon meeting the minimum requirements for eligibility. State v. Ball, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998).

For offenders not eligible for community corrections under subsection (a), Tennessee Code Annotated section 40-36-106(c) creates a "special needs" category of eligibility. Subsection (c) provides that

[f]elony offenders not otherwise eligible under subsection (a), and who would be usually considered unfit for probation due to histories of chronic alcohol, drug abuse, or mental health problems, but whose special needs are treatable and could be served best in the community rather than in a correctional institution, may be considered eligible for punishment in the community under the provisions of this chapter.

Tenn. Code Ann. § 40-36-106(c).

When determining a defendant's suitability for alternative sentencing, courts should consider whether the following sentencing considerations, set forth in Tennessee Code Annotated section 40-35-103(1), are applicable:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Additionally, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Tenn. Code Ann. § 40-35-103(5). A defendant with a long history of criminal conduct and "evincing failure of past efforts at rehabilitation" is presumed unsuitable for alternative sentencing. Tenn. Code Ann. § 40-35-102(5).

On appeal, the appellant contends that although he has no history of mental health or substance abuse issues, "his lack of history with the criminal justice system coupled with his limited education and understanding of the English language and American culture would lead any trial court to consider him to be a 'special needs' candidate for Community Corrections." However, we believe the record supports the trial court's denial of a community corrections sentence. The trial court denied the appellant's request for alternative sentencing based upon the amount of the drug involved and the appellant's prior use of the drug. The trial court also found that confinement was needed in order to avoid depreciating the seriousness of the offense. However, the facts of this case did not warrant such a finding. See State v. Zeolia, 928 S.W.2d 457, 462 (Tenn. Crim. App. 1996) (stating that in denying full probation to avoid depreciating the seriousness of the offense, the criminal act should be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree). In any event, given the large amount of the drug involved, the appellant's prior drug use, for which he has never sought rehabilitation, and his being arrested in

Pennsylvania for possession of Khat only three months after his arrest in the present case, we conclude that the trial court properly denied his request for alternative sentencing.

### E.  Interpreter

Finally, the appellant contends that the trial court erred by failing to certify the Somali language interpreter.  The State argues that the appellant has waived this issue because he failed to object in the trial court.  We agree with the State.  The record reflects that the appellant failed to raise any objection to the interpreter at the guilty plea hearing, the hearing on the motion to withdraw, or the sentencing hearing.  Therefore, he has waived this issue. See Tenn. R. App. P. 36(a); State v. Devin Banks, ___ S.W.3d ___, No. W2005-02213-SC-DDT-DD, 2008 WL 4823068, at *___ (Tenn. at Jackson, Nov. 7, 2008).  Moreover, we discern no plain error. Id. at *___ (holding that defendant was not entitled to plain error relief when the record did not indicate that a certified or registered interpreter was readily available or that the interpreter's translation undermined the fairness of the proceeding).

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE